UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-37 (JWB/DTS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRENNA MARIE DOYLE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | GOVERNMENT'S SENTENCING MEMORANDUM |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its position and memorandum on sentencing. In accord with the plea agreement, (ECF 40), the United States recommends concurrent terms of one-year probation on each of the two misdemeanor convictions, for (Count 1) assaulting and impeding a United States Officer, and for (Count 2), assaulting a Federal Law Enforcement Officer's immediate family members, with concurrent terms of 12 months' home confinement, with standard exceptions for medical, religious, employment, schooling, and other reasons as approved by the supervising probation officer.

While the gravity of the defendant's crimes is extremely serious, the United States believes the totality of the circumstances equates the government's recommended sentence as a sentence that is sufficient but not greater than necessary to comply with the Section 3553(a) sentencing factors.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

The United States agrees with and incorporates by reference the facts from the July 13, 2026 Final PSR (ECF 44, PSR ¶¶ 7-11), as well as the facts in the plea agreement (ECF 40, ¶ 2). In summary, in or about January 2026, the defendant found the personal information of the victim FBI agent posted on social media, and between about 7:30 a.m. and 7:35 a.m., left three extremely violent and threatening voicemail messages on Victim A's work cellphone, from her residence in Spokane, Washington.

Each voicemail consisted of the defendant, who was only 18-years-old at the time, literally screaming vile and horrific epithets directed at the victim FBI agent, calling the victim-agent horrible names (e.g., "f**king piece of sh*t," "f**king stupid wife beater," "f**king idiot," "f**king fat white-haired bitch"), and directly threatening that she would murder the agent and the agent's family members, including specifically the victim-agent's wife and "dead damn f**king daughter." The defendant repeated her threats to murder the victim-agent and his specific family members no less than seven times in the three voicemails left serially within a matter of five minutes on the victim-agent's work cellphone. To add to the horrific gravity of her offenses, the defendant emphasized that she didn't "give a flying f**k," and repeatedly threatened that she herself would kill the victim-agent and his family members.

Even more disturbing, the defendant did not know the victim-agent in any way. Rather, the defendant obtained the victim-agent's personal information from social

media posts that were made in the aftermath of a riot in Minneapolis on January 14, 2026, following an immigration-enforcement related shooting that did not involve the FBI in any way. Rather, FBI agents and evidence-recovery technicians responded to and were on the scene only to investigate the shooting and gather evidence. The defendant, however, randomly selected the victim-agent's information from social media and, with no knowledge of who the FBI victim-agent was or what role he had, purposely and intentionally called the victim-agent's work cellphone and unloaded her fiery and extremely violent tirades.

In February 2026, the United States initially obtained a three-count Indictment against the defendant, charging her with threatening to murder a Federal Law Enforcement Officer, threatening to murder a Federal Law Enforcement Officer's immediate family members, and interstate transmission of a threat to injure another person. (PSR ¶ 1; ECF 16) These felony charges carried up to 10- and 5-years' imprisonment, respectively, (PSR ¶ 81), and the defendant faced a potential Guidelines range of 24 to 30 months' imprisonment (17/I).

In May 2026, however, the United States filed a two-count misdemeanor Information, charging the defendant with assaulting and impeding a United States Officer, in violation of 18 U.S.C. § 111(a)(1), (Count 1), and with assaulting a Federal Law Enforcement Officer's immediate family members, in violation of 18 U.S.C. § 115(a)(1)(A). (ECF 29; PSR ¶ 2) As charged, each count carries a statutory maximum of one year imprisonment, one year of supervised release, and up to five years of probation. (PSR ¶¶ 76, 83, 88)

On May 15, 2026, the defendant pleaded guilty to both Counts of the misdemeanor Information, pursuant to a plea agreement. (PSR ¶ 3; ECF 37, 40) The defendant also executed and filed a waiver of indictment. (PSR ¶ 3; ECF 39)

On July 13, 2026, the United States Probation Office issued a final PSR, finding the total offense level to be 10 and criminal history category to be I,[1] resulting in an advisory Guidelines' range of 6 to 12 months' imprisonment. (PSR ¶¶ 35, 42, 77) The PSR properly noted that because the applicable Guidelines range falls within Zone B, the minimum term may be satisfied by a term of probation that includes a condition of home detention for imprisonment. (PSR ¶ 77; USSG § 5C1.1)

The Guidelines range determined by the PSR differed from that contemplated by the plea agreement, because the plea agreement mistakenly calculated a total offense level of 13. (PSR ¶ 82; ECF 40, ¶¶ 8.f., h., and j.)

**ARGUMENT**

In following the sentencing methodology laid out by the Supreme Court, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50.

[1] The PSR also determined the defendant has a total criminal history score of 0. (PSR ¶¶ 42, 44) The defendant is not eligible, however, for a further reduction as a Zero-Point Offender under USSG § 4C1.1, because the nature of the offense and the defendant's conduct involves a credible threat of violence. (PSR ¶ 33; USSG § 4A1.1(a)(3))

Section 3553(a) requires the Court to consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a). But a district court is not required to provide a mechanical recitation of the Section 3553(a) factors and has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence. *United States v. Masood*, 133 F.4th 799, 809 (8th Cir. 2025); *United States v. Dennis*, 131 F.4th 913, 917 (8th Cir. 2025).

### A. **The Guidelines Calculations**

The United States agrees with the PSR's calculated total offense level of 10, criminal history category of I, and Guidelines range of 6 to 12 months. In accord with the plea agreement, the United States advocates for a sentence of concurrent terms of one-year probation on each of the two misdemeanor convictions, with concurrent terms of 12 months' home confinement, with standard exceptions for medical, religious, employment, schooling, and other reasons as approved by the supervising probation officer, as a sentence that is sufficient but not greater than necessary to comply with the § 3553(a) sentencing factors. Additionally, the United States agrees with and recommends the conditions of supervision suggested in the PSR. (PSR ¶¶ 105-111).

### B. The Section 3553(a) Factors

A consideration of the § 3553(a) factors amply a sentence of concurrent terms of one-year probation, with concurrent terms of 12 months' home confinement. As noted above, while the gravity of the defendant's crimes is extremely serious, the totality of the circumstances equates the government's recommended sentence as a sentence that is sufficient but not greater than necessary to comply with the Section 3553(a) sentencing factors.

#### 1. Nature and Circumstances of the Offenses

As noted above, the then-18-year-old defendant left three extremely violent and horrifically epithet-laced voicemails on the victim-agent's work cellphone within a five-minute span, threatening to murder the victim-agent and victim-agent's wife and daughter no less than seven times. The vehement, violent, and repeated nature of the threats to murder are truly shocking and frightening. Given that the defendant's offenses readily qualified as serious violent felony offenses, a misdemeanor disposition with no jail time, but home confinement with concurrent probationary terms is readily warranted by the nature and circumstances of the offense. Such a sentence and disposition will fairly and adequately hold the defendant accountable for her horrific offenses, but avoid needlessly saddling her with two or more felony convictions when she is only 19 years old. In other words, a sentence that is sufficient but not greater than necessary.

2. History and Characteristics of the Defendant

The United States submits that the PSR accurately and adequately describes the defendant's criminal history, personal history, and characteristics. The defendant is only 19 years old, and was only 18 years old when she committed the violent offenses. The defendant has minimal criminal history with the only exception being a 2025deferred disposition on a felony attempting to elude police in a vehicle. (PSR ¶ 39)

The defendant had a very dysfunctional upbringing based on her parents divorcing when she was only 10 years old, the defendant reporting a significantly troubling history of severe physical, emotional, and sexual abuse by her father and to a much lesser extent by her mother, and the apparent frequent involvement of child protective services. She has apparently lacked a father figure in her life since she was 10 years old. Adding to the complexity and troubling nature of her personal and family history, her father was apparently a police officer. The defendant reported moving out of her mother's residence when she was only 16 years old, and has been living independently for some time.

The defendant also has a significant history of mental and emotional health concerns, including ADHD, depression, and anxiety and confirmed diagnoses of borderline personality disorder and adjustment disorder. Fortunately, the defendant is currently participating in mental health therapy and is currently stable with a medicated regiment.

The defendant has a history of daily marijuana use from a young age but appears to be addressing and reducing her use as part of her therapy and is trying to maintain sobriety through ongoing outpatient treatment, which she is finding helpful. To the defendant's credit, she has tested negative for alcohol and illicit substances while on pretrial supervision.

The defendant has also experienced a lengthy history of academic and social challenges, with reported delays in school and learning ability that led to her withdrawing from school. Again to the defendant's credit, however, she obtained her GED certificate in 2023 and has completed about one-year's worth of community college.

The defendant does have a strong employment history and has maintained steady employment since adolescence, often working multiple jobs. Although she was terminated from a prior job after being charged in the present case, she has since secured a managerial position at a local hardware store and the employer is aware of the pending matter.

3. Needs of Sentencing and Other 3553(a) Factors

A sentence of concurrent terms of one-year probation, with concurrent terms of 12 months' home confinement, are amply warranted by the needs of sentencing and other Section 3553(a) factors. While certainly mitigating factors exist, such as the defendant's highly dysfunctional upbringing, her physical, emotional, and sexual abuse, her lack of guidance or father-figure, and her being independent from her family at a young age, aggravating factors also exist that warrant consideration and

weight such as the extremely violent nature of the offenses and repeated threats to murder the victim-agent and victim-agent's family that she knew nothing about, except for finding the victim-agent's work cellphone number that was blasted on social media following significant unrest and violence in the Twin Cities.

On balance, a sentence of concurrent terms of one-year probation, with concurrent terms of 12 months' home confinement, would serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to avoid sentencing disparities, and to protect the public from further crimes of the defendant. The recommended conditions of supervision will also hopefully continue to benefit the defendant's need for mental and emotional therapy and help her continue to maintain sobriety while permitting her to continue working.

## CONCLUSION

For all the foregoing reasons, the United States respectfully recommends that the Court impose a sentence of concurrent terms of one-year probation, with concurrent terms of 12 months' home confinement, allowing leave for medical, religious, employment, schooling, and other reasons as approved by the supervising

probation officer. The United States also recommends that the Court follow and adopt the recommended conditions of supervision in the PSR.

Respectfully submitted,

Dated: August 26, 2026

DANIEL N. ROSEN
United States Attorney

/s/ *Benjamin Bejar*

BY: BENJAMIN BEJAR
Attorney ID No. 351131
Assistant United States Attorney
District of Minnesota